J-S70028-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: H.L.R.B., III, A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: H.R., FATHER | No. 365 EDA 2016 |

Appeal from the Decree December 18, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000106-2015
CP-51-DP-0001940-2013
FID#51-FN-002630-2011

BEFORE: OLSON, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                    **FILED NOVEMBER 01, 2016**

H.R. ("Father") appeals from the decree entered December 18, 2015, in the Court of Common Pleas of Philadelphia County, which involuntarily terminated his parental rights to his minor son, H.L.R.B., III ("Child"), born in July of 2013.[1]  After careful review, we affirm.

The trial court summarized the factual and procedural history of this matter as follows.

---

[1] Child's mother, A.B. ("Mother"), executed a consent to adoption form on June 24, 2015.  On December 18, 2015, the trial court entered a decree confirming Mother's consent and terminating her parental rights to Child. Mother has not filed a brief in connection with this appeal, nor has she filed her own separate appeal.

The family in this case became known to [the Philadelphia Department of Human Services ("DHS")] when DHS received a General Protective Services ("GPS") report on March 18, 2010[,] that Father and [Mother] were using drugs, that there was ongoing domestic abuse between Father and Mother, and that Mother was not able to keep her children safe from Father. Mother had obtained a Protection From Abuse ("PFA") order, but Father continued to threaten Mother. This report was substantiated. DHS removed Mother's two other children pursuant to an Order of Protective Custody ("OPC") on June 1, 2011. On January 29, 2013, Mother's and Father's parental rights to these two other children were voluntarily terminated.

Mother gave birth to Child, her third child, on July 24, 2013. On July 25, 2013, DHS received a GPS report that Mother was unable to care for Child, and had tested positive for benzodiazepines. Child was diagnosed with Intra-Uterine Growth Retardation and Gastroschisis, and was transferred to the Neonatal Intensive Care Unit, where he remained until September 23, 2013. On July 27, 2013, DHS conducted a home assessment of the home where Mother and Father lived. Father was under the influence of an unknown substance and was unable to hold a conversation. Father appeared to be under the influence of unknown substances again during an August 12, 2013, hospital visit to see Child. Father engaged in an argument with Mother and was escorted from the hospital by security officers. The next day, Mother obtained a PFA for herself and Child against Father. Father did not maintain contact with DHS. When Child was discharged on September 23, 2013, DHS obtained an OPC and placed Child with his maternal great-cousins, Y.M. and J.M. ("Foster Parents"). At a September 25, 2013, shelter care hearing, the OPC was lifted and temporary commitment to DHS was ordered to stand. Father was given supervised visitation at the agency, and was referred to the Clinical Evaluation Unit ("CEU") for a forthwith drug screen. Father denied paternity of Child.

Child was adjudicated dependent on October 4, 2013, and fully committed to DHS custody. . . .

Trial Court Opinion, 3/7/2016, at 1-2.

On February 18, 2015, DHS filed a petition to involuntarily terminate Father's parental rights to Child. The trial court held a termination hearing on June 5, 2015, August 21, 2015, and December 18, 2015. Following the final day of the hearing, the court entered a decree terminating Father's parental rights. Father timely filed a notice of appeal on January 19, 2016, along with a concise statement of errors complained of on appeal.[2]

Father now raises the following claims for our review.

> 1. Did the court below err in finding that grounds for termination of parental rights had been proven by "clear and convincing evidence"?
>
> 2. Did the court below err in finding that [DHS] had met its burden in proving grounds under 23 Pa.C.S.A. §§2511(a)(1),(2),(5) and (8)?
>
> 3. Did the court below err in finding that DHS had met its burden to prove that termination would be in the child's best interests, under §2511(b)?
>
> 4. Did the court below err in denying Due Process and Equal Protection of Law to Appellant H.R., Father, as guaranteed by

---

[2] We note that Father had thirty days to appeal the trial court's termination decree, meaning that his notice of appeal would normally be due by January 17, 2016. *See* Pa.R.A.P. 903(a) ("Except as otherwise prescribed by this rule, the notice of appeal . . . shall be filed within 30 days after the entry of the order from which the appeal is taken."). Because January 17, 2016, was a Sunday, and because court was closed on January 18, 2016, for Martin Luther King Jr. Day, Father's notice of appeal was timely filed on January 19, 2016. *See* 1 Pa.C.S.A. § 1908 ("Whenever the last day of any such period shall fall on Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation.").

the Constitutions of the United States and the Commonwealth of Pennsylvania?

Father's brief at 4 (trial court answers omitted).

We consider Father's claims mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the

emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the trial court terminated Father's parental rights pursuant to Sections 2511(a)(1) (2), (5), (8), and (b). We need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Here, we analyze the court's decision to terminate under Sections 2511(a)(2) and (b), which provide as follows.

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> ***
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not

- 5 -

consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

We first address whether the trial court abused its discretion by terminating Father's parental rights pursuant to Section 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

***In re Adoption of M.E.P.***, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted)). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." ***In re A.L.D.***, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

Instantly, the trial court found that Father's repeated and continued parental incapacity has caused Child to be without essential parental care, control, or subsistence, and that Father cannot, or will not, remedy the conditions and causes of this incapacity. The court reasoned that Father has failed to complete drug and alcohol treatment and refuses to submit random drug screens. Trial Court Opinion, 3/7/2016, at 9-10. In addition, the court emphasized that Father has failed to remedy his domestic violence and

anger management issues. *Id.* at 10. Finally, the court expressed concern regarding the quality of Father's visits with Child. *Id.* The court observed that Father often brings other individuals with him to visits, and leaves visits up to an hour early. *Id.*

Father argues that DHS failed to prove that his parental rights should be terminated by clear and convincing evidence. Father's brief at 11-12. Father acknowledges that he failed to comply when asked to submit random drug screens, but contends that he completed all of his other objectives. *Id.* at 11-12, 15. Father insists that his failure to comply with drug screens should not be held against him, because there was "absolutely no evidence, at any time throughout the course of this case," that he has a drug problem, other than "a mere allegation – made anonymously[.]" *Id.* at 15. Father further claims that he was not specifically ordered to provide "random" drug screens prior to August 21, 2015. *Id.* Father suggests that he may not have understood "exactly what he would need to do, in order for his screens to be considered 'random,'" and that he was not able to submit to random screens because of his work schedule. *Id.* at 15-16.

After carefully examining the record in this matter, we conclude that the trial court did not abuse its discretion by involuntarily terminating Father's parental rights to Child. During the termination hearing, DHS presented the testimony of Community Umbrella Agency case manager, Jared Burr. Mr. Burr testified that Father's Single Case Plan objectives included attending drug screens and complying with recommendations;

continuing with outpatient drug and alcohol treatment; completing a mental health evaluation and complying with recommendations; signing authorization and consent forms; addressing his parenting, anger management, and domestic violence issues; and complying with supervised visitation. N.T., 6/5/2015, at 10-11. Concerning Father's compliance with these objectives, Mr. Burr reported that Father completed a mental health evaluation, and that no treatment was recommended. *Id.* at 13. Father also completed a parenting program, and signed at least one consent form. *Id.* at 14-15, 39.

With respect to Father's drug and alcohol issues, Mr. Burr testified that Father completed an intensive outpatient treatment program on April 7, 2015. *Id.* at 12, 48. Father did not remain in treatment after completing the intensive outpatient program. *Id.* at 12. According to Mr. Burr, Father "was due to drop down to out-patient [*sic*] and he just never continued." *Id.* Father finally recommenced drug and alcohol treatment on or about December 17, 2015, only one day before the conclusion of the termination hearing. N.T., 12/18/2015, at 10.

Mr. Burr further testified that Father failed to comply when asked to submit random drug screens. Father was asked to submit screens on March 6, 2015, March 22, 2015, April 23, 2015, May 22, 2015, June 8, 2015, June 15, 2015, July 2, 2015, September 3, 2015, October 5, 2015, October 9, 2015, October 20, 2015, November 5, 2015, November 19, 2015, and December 3, 2015. *Id.* at 13; N.T., 8/21/2015, at 12; N.T., 12/18/2015, at

9. Father did not submit any of the requested screens. N.T., 6/5/2015, at 13; N.T., 8/21/2015, at 12; N.T., 12/18/2015, at 9. Instead, Father appeared on other dates and submitted screens at his convenience. N.T., 6/5/2015, at 13; N.T., 8/21/2015, at 13. Mr. Burr acknowledged that all of Father's screens have been negative. N.T., 6/5/2015, at 13, 51-52; N.T., 8/21/2015, at 13, 39.

With respect to anger management and domestic violence issues, Mr. Burr testified that Father completed both anger management and domestic violence programs. N.T., 6/5/2015, at 15; N.T., 8/21/2015, at 19. Mr. Burr remained concerned that Father was failing to apply the skills that he learned in these programs. N.T., 8/21/2015, at 18. For example, Mr. Burr described an incident that took place on June 11, 2015, when Father arrived for a visit with Child. *Id.* at 16. According to Mr. Burr, Father mistakenly believed that he was entitled to an unsupervised community visit. *Id.* Mr. Burr endeavored to explain to Father that he was not entitled to such a visit. *Id.* Father then "went on a profan[ity-]laced verbal tirade throughout our agency in front of other mothers and children and we had to get him into one of my supervisor's office[s] to get him to calm down. This took like around forty-five minutes. The child was crying uncontrollably." *Id.* Mr. Burr also described two alleged incidents of criminal behavior on the part of Father, both of which resulted in the filing of police reports. *Id.* at 16-17. In the first incident, on June 11, 2015, Father "spit into the resource parent[']s face." *Id.* at 17. In the second incident, on June 15, 2015,

Father "abused mom at a Dollar Store."[3]  *Id.* at 17, 68.  On the third day of the termination hearing, December 18, 2015, Mr. Burr reported that Father is now "very respectful," and that his relationship with Father had "greatly improved."  N.T., 12/18/2015, at 9.

Concerning visitation, Mr. Burr testified on June 5, 2015, and August 21, 2015, that Father attends his visits with Child consistently.  N.T., 6/5/2015, at 17; N.T., 8/21/2015, at 13.  However, Mr. Burr related that Father always brings family members with him to visits.  N.T., 8/21/2015, at 33-34.  As a result, the trial court directed that Father must attend his visits alone.  *Id.* at 79-80.  Despite this directive, Mr. Burr testified on December 18, 2015, that Father once again brought an individual with him to sit in on a visit.  N.T., 12/28/2015, at 11.  Mr. Burr also reported that Father often leaves his visits early.  *Id.* at 11-12.  On October 22, 2015, for example, Father left his two-hour visit after only an hour.  *Id.*

Accordingly, the record supports the trial court's finding that Father is incapable of parenting Child, and that Father cannot, or will not, remedy his parental incapacity.  At the time of the termination hearing, Child had been in foster care for over two years.  During Child's time in foster care, Father failed to complete drug and alcohol treatment, and failed repeatedly to

---

[3] Father was incarcerated at the time Mr. Burr was assigned to this case in July of 2014, due to "[d]omestic violence against mom."  N.T., 6/5/2015, at 24, 28.  Father remained incarcerated until November 18, 2014.  N.T., 12/18/2015, at 48-49.

comply with drug screens. While Father made some progress by completing anger management and domestic violence programs, he remained either unwilling or incapable of controlling his violent behaviors for the majority of Child's dependency. Father also has been leaving his visits with Child early, and he refused to comply when ordered not to bring anyone else with him to visits. As this Court has stated, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006).

With respect to Father's claim that there is no evidence that he has a drug problem, the certified record on appeal belies this assertion. Most notably, the record contains a copy of Child's October 4, 2013 Order of Adjudication and Disposition. The order indicates that the court adjudicating Child dependent found as a fact the "[a]llegations in [the] Dependen[cy] Petition." Order Adjudication and Disposition, 10/4/2013, at 1. In its dependency petition, DHS alleged that it conducted an assessment of Father's home on July 27, 2013, and that Father "appeared to be under the influence of an unknown substance and was unable to hold a conversation." Dependency Petition, 9/26/2013, Statement of Facts at ¶ m. On August 12, 2013, Father "appeared to be under the influence of an unknown substance" during a visit with Child at the hospital. *Id.* at ¶ n. DHS further alleged that

Father was "found guilty of drug-related charges on September 14, 2007[,] and July 14, 2010." *Id.* at ¶ r. Thus, the record is replete with evidence to support the trial court's belief that Father engages, or has engaged, in illegal drug use.

Moreover, while Father now suggests on appeal that he did not know that he had to submit random drug screens, and that he believed he was permitted to show up for drug screens whenever he felt like it, Father did not claim that this was the case during the termination hearing. Instead, Father claimed that he could not submit random drug screens because of his work schedule. N.T., 12/18/2015, at 38-39. Even if Father had claimed during the hearing that he did not know that he had to submit random drug screens, and that he did not know what a random drug screen is, the trial court would have been well within its discretion to reject Father's explanation as incredible. Concerning Father's claim that he could not submit random drug screens because of his work schedule, the record reveals that Father failed to submit random drug screens even after leaving his job in October of 2015. *See id.* at 45. This claim also fails.

We next consider whether the trial court abused its discretion by terminating Father's parental rights pursuant to Section 2511(b). We have discussed our analysis under Section 2511(b) as follows.

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding

analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)) (quotation marks and citations omitted).

Here, the trial court found that terminating Father's parental rights would best serve Child's needs and welfare. Trial Court Opinion, 3/7/2016, at 15. The court reasoned that Child does not share a parent/child bond with Father, and that Child instead is bonded with his foster parents. *Id.* at 13-14. The court concluded that Child would not suffer irreparable harm if Father's parental rights are terminated. *Id.* at 14.

Father argues that the trial court relied erroneously on the testimony of Mr. Burr and Child's foster mother when determining that termination would serve Child's needs and welfare. Father's brief at 24. Father stresses that Mr. Burr did not supervise Father's visits with Child, and that Mr. Burr

presented contradictory testimony as to whether Father and Child share a parent/child bond. *Id.* at 24-25. Father also suggests that the court should have viewed the foster mother's testimony "with some degree of skepticism," since foster mother made it clear that she would like to adopt Child. *Id.* at 24.

Relatedly, Father contends that "a number of rulings by the trial court" violated his rights to due process and equal protection under the United States and Pennsylvania Constitutions. Father's brief at 26-27. Father first challenges the portion of Section 2511(b) providing that, "[w]ith respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S.A. § 2511(b). Father insists that applying this provision makes it "potentially impossible" for parents to overcome their prior bad behavior, and denies parents a "meaningful" termination hearing. Father's brief at 27-28. Father also claims that the trial court allowed inadmissible hearsay during the termination hearing, and that he was denied "adequate and meaningful notice" of the termination hearing. *Id.* at 28.

We again conclude that the trial court did not abuse its discretion. Admittedly, Mr. Burr's assessment of the relationship between Father and Child changed somewhat as the termination proceedings progressed. On June 5, 2015, Mr. Burr stated that he did not believe that there is a bond between Father and Child, because it is "very early in the process still.

During visitation, . . . the child is more worried about where the resource parent is." N.T., 6/5/2015, at 22. Mr. Burr opined that Child would not suffer irreparable harm if Father's parental rights are terminated, as Child is "completely bonded with the resource parent." *Id.* at 22. On August 21, 2015, Mr. Burr opined that Child has a "limited" bond with Father, and he agreed that Child's bond with Father is a parent/child bond. N.T., 8/21/2015, at 21. Mr. Burr repeated his previous assessment that Child would not suffer irreparable harm if Father's parental rights are terminated, because Child has such a strong bond with his foster mother. *Id.* at 21-22. On December 18, 2015, Mr. Burr described Child's relationship with Father as an uncle/child bond, rather than a parent/child bond. N.T., 12/18/2015, at 21.

However, Mr. Burr testified consistently concerning the quality of Father's visits with Child. Mr. Burr explained that he does not observe Father's visits with Child, but that he reviews reports prepared by a visitation coach.[4] N.T., 6/5/2015, at 18-19. Based on his review of these reports, Mr. Burr related that that Child frequently struggles at the start of visits, and cries uncontrollably for five to twenty minutes upon being left with Father. *Id.* at 21; N.T., 8/21/2015, at 19, 71; N.T., 12/18/2015, at 12, 19. Father eventually is able to console Child, and they engage in activities

---

[4] Mr. Burr testified on December 18, 2015, that he did monitor a single visit between Father and Child. N.T., 12/18/2015, at 19.

together. N.T., 6/5/2015, at 21; N.T., 8/21/2015, at 71; N.T., 12/18/2015, at 12, 19. During visits, Child asks for his "mommy" or "mom," meaning his foster mother. N.T., 6/5/2015, at 21; N.T., 12/18/2015, at 12, 19.

Thus, the record supports the finding of the trial court that Child will not suffer irreparable harm if Father's parental rights are terminated, and that termination will best serve Child's needs and welfare. At the time the trial court entered the subject termination decree, Child was about two and a half years old, and had resided with his foster mother since being released from the hospital approximately two months after his birth in September of 2013. Child has never lived with Father, and when Child visits with Father he cries uncontrollably up to twenty minutes and asks for his "mommy," meaning his foster mother. Given this evidence, it is clear that Child does not share a parent/child bond with Father. While Father complains that the trial court should not have credited the testimony of Mr. Burr and Child's foster mother when reaching its decision, we are bound by the court's credibility determinations where those determinations are supported by the record. **T.S.M.**, 71 A.3d at 267.

Further, we need not consider Father's constitutional challenge to the portion of Section 2511(b) prohibiting courts from considering "any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S.A. § 2511(b). The relevant provision applies only to Sections 2511(a)(1), (6), and (8). Here, we have determined that the record

- 16 -

supports the trial court's decision to terminate Father's parental rights pursuant to Section 2511(a)(2), and this provision is not applicable. Nonetheless, we observe that a panel of this Court recently rejected a similar constitutional challenge and held that Section 2511(b) did not violate an appellant mother's right to due process or equal protection. *See In re Adoption of C.J.P.*, 114 A.3d 1046, 1055-1057 (Pa. Super. 2015). Even if the relevant provision of Section 2511(b) did apply in the instant matter, Father would not be entitled to relief.

With regard to Father's claim that the trial court violated his constitutional rights by allowing hearsay testimony during the termination hearing, Father fails completely to develop this claim in his brief. As a result, it is waived. *In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011), *appeal denied*, 24 A.3d 364 (Pa. 2011) (quoting *In re A.C.*, 991 A.2d 884, 897 (Pa. Super. 2010)) ("'[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.'").

Finally, Father also has waived his claim that he did not have notice of the termination proceedings. As observed by the trial court, both Father and his counsel appeared at all three days of the termination hearing, and did not raise any objection with respect to insufficient notice. *See In re Adoption of W.C.K.*, 748 A.2d 223, 228 (Pa. Super. 2000), *overruled on other grounds*, *In re Adoption of Z.S.H.G.*, 34 A.3d 1283, 1288–1289 (Pa.

Super. 2011) ("[T]he entry of appearance by [the appellant's] attorney and her subsequent participation in the termination hearing without objection to sufficiency of notice waived any claim personal to [the appellant] on this issue.").

Accordingly, because we conclude that the trial court did not abuse its discretion by involuntarily terminating Father's parental rights to Child, we affirm the decree of the trial court.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/1/2016